UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

In re:

BERNARD C. MAZON and
JANE I. MAZON,

Chapter 7
Case No. 9:05-BK-04213-MGW

　　　　Debtors.

_____/

## MEMORANDUM DECISION ON TRUSTEE'S
## MOTION TO SURCHARGE DEBTORS' EXEMPT PROPERTY

A trustee may equitably surcharge a debtor's statutory exemptions when the debtor has

failed to schedule and turn over estate assets. A homestead exempt under Florida's

constitutional exemption, however, may not be so surcharged unless the estate assets can be

traced into the acquisition of an interest in the homestead.

In this case, the debtors failed to disclose assets valued at approximately $615,000, which

they dissipated post petition. However, none of the dissipated estate assets can be traced into the

debtors' homestead. Accordingly, the motion of the Trustee to surcharge exempt assets will be

granted as to the assets claimed as exempt under the Florida general statutory exemptions and

denied as to the property that has been claimed as exempt under the Florida constitutional

homestead exemption.

### *Procedural Background*

This case came on for a final evidentiary hearing on April 26, 2007, on the Trustee's

Motion to Surcharge Debtors' Exemptions and/or Exempt Property (Doc. No. 147) ("Motion").

The Court considered the entire record, including the exhibit that is part of the record in this case

and the record established in adversary proceedings filed by the Trustee (Adv. No. 9:06-ap-00313-MGW) ("Trustee's Adversary") and Callahan & Blaine, the largest single creditor of the Debtors (Adv. No. 9:05-ap-00219-MGW) ("Creditor's Adversary"). This court has jurisdiction of this matter under 28 U.S.C. sections 157 and 1334(b). This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A), (B), (E), and (O).

The debtors, Bernard C. Mazon and Jane I. Mazon ("Debtors"), filed their chapter 7 petition on March 10, 2005. Robert E. Tardif, Jr. was appointed as the trustee ("Trustee"). On Schedules A and B, the Debtors scheduled a condominium unit in Naples, Florida, valued at $760,000, three 401k accounts collectively valued at $100,000, and a life insurance policy with cash value of $40,000. The Debtors claimed these assets as exempt on Schedule C.

As part of the administration of this case, the Trustee's Adversary was filed seeking the turnover of property from the Debtors. In addition, Callahan & Blaine filed the Creditor's Adversary, seeking the imposition of an equitable lien against the Debtors' homestead. The Court consolidated the two adversary proceedings for purposes of trial, and the trial was conducted on December 13, 2006, and on January 17, 2007.

During the course of discovery in the adversary proceedings, the Trustee learned that the Debtors failed to schedule and disclose various assets they owned on the date of filing. Specifically, the Debtors individually or jointly owned two annuities with a combined value of more than $2,100,000 ("Annuities"); an IRA valued at approximately $270,000 ("IRA"); and interests in two businesses, Emicole Properties, LLC and Emicole Investments, Ltd. ("Emicole Assets"). In the Trustee's Adversary, the Court entered an order and final judgment, finding that the Annuities, IRA, and Emicole Assets were property of the bankruptcy estate and not subject to exemption.

In the Creditor's Adversary, the Court entered a final judgment granting an equitable lien to the creditor in the amount of $1,102,811.86 against the Debtors' homestead unit. The Court ordered that the homestead be sold to satisfy the equitable lien. In the event that the sale amount exceeds the equitable lien, the Court ruled that the Debtors would retain the surplus as exempt property.

Although the Court awarded the Trustee the Annuities and the IRA and the Trustee was able to preserve those assets, the Trustee did not recover any Emicole Assets before they were dissipated by the Debtors. These assets consisted of (1) a financial account maintained by Emicole Investments, Ltd. at Frost Brokerage Services with a balance of $434,939.22 on the date of filing, and (2) real property in Pennsylvania owned by Emicole Properties, LLC on the date of filing and sold post petition for $181,196.23. The Debtors spent the money obtained from the Emicole Assets for their personal use.

As a result of the Debtors' failure to schedule, disclose, and turn over the Emicole Assets, the Trustee filed the Motion seeking an order surcharging the Debtors' exempt property. Specifically, the Trustee requests that the Court allow him to surcharge the three 401k accounts, the life insurance cash value, and any money that the Debtors receive from the sale of their homestead that exceeds the equitable lien in favor of Callahan & Blaine.

### *Conclusions of Law*

A.      Trustee's Right to Surcharge Exempt Property in Exceptional Circumstances

The filing of bankruptcy creates an estate composed of all legal and equitable interests of the debtor in property. 11 U.S.C. § 541. In Florida, a debtor may exempt from property of the estate either property specified in Section 522(d) of the United States Bankruptcy Code or, alternatively, the exemptions permitted under Florida statutory and constitutional state law and

non-bankruptcy federal law.  By willfully and fraudulently concealing and dissipating estate assets, a debtor, effectively, keeps more assets than the Bankruptcy Code allows.  Essentially, the debtor secretly exempts assets because the concealment and dissipation prevents administration of the assets by a trustee for the benefit of creditors.

The threshold legal issue presented by the Trustee's motion is whether a bankruptcy court may authorize a surcharge against a debtor's exempt assets in circumstances such as these where there has been a material failure to disclose assets of a bankruptcy estate that are subsequently dissipated.  There is no Eleventh Circuit Court of Appeals case or any Florida case – either bankruptcy court or district court – on this point.  Courts around the country, however, have had occasion to consider whether a trustee should be permitted to surcharge exempt property.

The Bankruptcy Code does not explicitly provide for the remedy of surcharge against a debtor's exemptions.  *Latman v. Burdette*, 366 F.3d 774, 785 (9th Cir. 2004).  However, the "broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process'" described in section 105  has been recently reaffirmed by the United States Supreme Court in the case of *Marrama v. Citizens Bank of Massachusetts,* 127 S. Ct. 1105, 1112 (U.S. 2007).  Indeed, as noted by the Supreme Court in *Marrama*, "even if § 105(a) had not been enacted, the inherent power of every federal court to sanction 'abusive litigation practices,' [citation omitted] might well provide an adequate justification for a prompt" remedy when faced with a debtor's active misconduct to take advantage of the bankruptcy system for improper purposes as occurred in *Marrama* and as has occurred in this case.  *Id.*

The need to prevent abuse of the judicial system is all the more imperative in the bankruptcy context.  As the Supreme Court has explained, bankruptcy courts "are courts of equity and 'appl[y] the principles and rules of equity jurisprudence.'"  *Young v. United States,*

4

535 U.S. 43, 50 (2002) (quoting *Pepper v. Litton*, 308 U.S. 295, 304 (1939)); *see also Bank of Marin v. England*, 385 U.S. 99, 103 (1966) ("There is an overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction."); *SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 457 (1940) ("Good sense and legal tradition alike enjoin that an enactment of Congress dealing with bankruptcy should be read in harmony with the existing system of equity jurisprudence of which it is a part."). Chief among these equitable principles and rules is the concept that a debtor who seeks relief under the Bankruptcy Code must act in good faith and not for any improper purpose. As the Supreme Court has explained, "[o]nly exemplary motives and scrupulous good faith" can stir a court of equity to grant relief in bankruptcy. *Shapiro v. Wilgus*, 287 U.S. 348, 356-57 (1932); *see also Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986) (noting that the good faith standard "protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with 'clean hands.' "); *In re Wiggles*, 7 B.R. 373, 375 (Bankr. N.D. Ga. 1980) (tracing the origins of the concept of good faith in the bankruptcy context to *Shapiro*).

The Supreme Court has also recognized that bankruptcy courts have long relied upon their inherent equitable powers in passing on and preventing "a wide range of problems arising out of the administration of bankrupt estates." *Pepper*, 308 U.S. at 304. Clearly, failure to disclose assets and the misappropriation of those assets falls squarely within the types of problems with which a bankruptcy court must be able to effectively deal.

The only explicit reference to a right to surcharge is found in section 506(c).[1]  *See* 2 W. Norton, Bankruptcy Law and Practice 2d § 43:4, p 43-27 (2004) (referring to trustees' section 506(c) claims as "Surcharge Claims").  This section, however, is limited to a trustee's right to recover the reasonable and necessary costs and expenses of preserving or disposing of property securing a claim to the extent the secured claimant has benefited.  Yet, even absent specific statutory authority, bankruptcy courts have, in the face of exceptional misconduct, developed remedies that prevent what would otherwise be a fraud on the court and on creditors caused by the debtor's failure to schedule and turn over estate assets.  *Latman,* 366 F.3d at 785-786.  As a result, in exceptional circumstances, bankruptcy courts have allowed trustees to equitably surcharge a debtor's statutory exemptions.  *Id.* at 786; *In re Hamblen*, 354 B.R. 322, 325 (Bankr. N.D. Ga. 2006).  The purpose of the surcharge is to reach an equitable result that preserves the spirit of the Bankruptcy Code.  *Latman*, 366 F.3d at 785; *In re Karl*, 313 B.R. 827, 831 (Bankr. W.D. Mo. 2004).

For example, in *Latman*, the debtors sold a car and a boat for $8,500 just days before filing bankruptcy, but only scheduled cash on hand in the amount of $1,500.  *Latman*, 366 F.3d at 779.  The debtors failed to account for the $7,000 balance that they received but did not schedule.  *Id.* The trustee moved to surcharge the debtors' wild-card exemption, which they used to cover the value of a van and an engagement ring.  *Id.*  The Ninth Circuit Court of Appeals upheld the trustee's ability to equitably surcharge exemptions because it was reasonably

---

[1] 506(c) states that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c).

necessary to protect the integrity of the bankruptcy process and ensured that a debtor did not exempt an amount greater than permitted by the Bankruptcy Code. *Id.* at 786.

Similarly, in *Hamblen*, the debtors sold real property shortly before filing bankruptcy, deposited $200,000 of the proceeds into an account in the debtor's mother's name, and thereafter used the funds post petition and did not truthfully account for the proceeds. 354 B.R. at 326. The court authorized the surcharge of the debtors' $20,000 homestead exemption, concluding that the debtors, by their fraudulent concealment of the sale proceeds, realized more than their allowable homestead exemption. *Id.* at 328. *See also In re Karl*, 313 B.R. at 832 (permitting surcharge of debtor's homestead exemption by value of truck that debtor failed to recover and surrender to trustee); *In re Ross-Tucker*, No. 03-1436, 2005 WL 3263932, at *1 (Bankr. D.C. Nov. 28, 2005) (authorizing trustee to surcharge exempt homestead in amount of $25,000 judgment awarded to trustee that represented amount the debtor dissipated from the proceeds of a lawsuit the debtor settled without court authorization).

For these reasons, the Court concludes that it is within its discretion to exercise both the explicit grant of authority under section 105 and its inherent powers to surcharge the assets that the Debtors have claimed as exempt under Florida statutory exemptions. These exemptions would otherwise allow the Debtors to claim as exempt three 401k retirement accounts and the cash value of the Nationwide Life Insurance policy. Accordingly, the Trustee will be allowed to administer as property of this bankruptcy estate the following previously exempted assets:

     a.     401k at T. Rowe Price Account – Plan ID 70089 (Tenfold Corporation)
     b.     401k at Computer Sciences Corporation – SSN 171-xx-xxxx
     c.     401k at RBC Financial Group – ENV # MG001045 – MG 14006
     d.     Nationwide Variable Life Policy – No. N990067730

B.      Trustee's Right to Surcharge the Florida Constitutionally Exempt Homestead

The Court, however, must separately consider whether the Trustee is entitled to surcharge the Debtors' homestead property because the homestead exemption enjoys a special place in the hierarchy of rights given to Florida citizens.  For the reasons more fully set forth below, the Court concludes that the Trustee is not permitted to surcharge the Debtors' homestead property.

In *Havoco of America, Ltd. vs. Hill*, 790 So.2d 1018 (Fla. 2001), the Florida Supreme Court, at the request of the Eleventh Circuit Court of Appeals, considered whether a debtor is entitled to Florida's homestead exemption when the debtor acquired the homestead using non-exempt funds with the specific intent of hindering, delaying or defrauding creditors.  Answering the certified question in the affirmative, the court held that so long as the actual funds being used to pay down a mortgage or to buy the homestead were not acquired by fraud or under egregious circumstances, the homestead exemption could not be denied solely based upon the use of the money.  *Id.* at 1028.

The Florida Supreme Court based its ruling upon considerations unique to Florida.  For example, the court noted that "the homestead exemption is to be liberally construed in the interest of protecting the family home" and its "homestead exemption jurisprudence has long been guided by a policy favoring the liberal construction of the exemption."  *Id.* at 1020-21.  An associated rule of construction that complements the liberal rule of construction in favor of homestead is the rule that exceptions to the homestead exemption are to be strictly construed.  *Id.*

In *Havaco*, the Florida Supreme Court emphasized that article X, section 4, of the Florida Constitution expressly provides only three exceptions to the homestead exemption.  *Id.* at 1022. Specifically, the forced sale of homestead may only occur "for (1) payment of taxes and

assessments thereon; (2) obligations contracted for the purchase, improvement or repair thereof; or (3) obligations contracted for house, field or other labor performed on the realty." *Id.* Over the years, the Florida Supreme Court has clearly held that exceptions to the homestead exemption must be guided by the plain language of the homestead provision, notwithstanding proof of improper or criminal conduct. *Id.* at 1021.

A case that highlights the narrowness of these exceptions is *Butterworth v. Caggiano*, 605 So.2d 56 (Fla. 1992). In that case, following Caggiano's conviction under Florida's Racketeer Influenced and Corrupt Organization Act, the state sought the civil forfeiture of his homestead. *Id.* at 57. The state argued that Caggiano's homestead was subject to forfeiture because he used the home in the course of racketeering activity. *Id.* The court noted that the exceptions are unqualified and create "no personal qualifications touching the moral character of the resident nor do they undertake to exclude the vicious, the criminal, or the immoral from the benefits" of homestead. *Id.* at 60. Similarly, five years later, the Court again refused to expand the exceptions to the homestead exemption when it held that a home being used as an instrumentality of a drug operation is not subject to forfeiture under the Florida Contraband Forfeiture Act. *Tramel v. Stewart*, 697 So.2d 821, 824 (Fla. 1997).

Viewed in its most basic form, the Trustee requests that the Court impose an equitable lien against the Debtors' homestead as a means of collecting on an obligation of the Debtors to turn over property of this bankruptcy estate. In the Creditor's Adversary, the Court did grant the creditor such an equitable lien upon the Debtors' homestead. However, unlike Callahan & Blaine, the Trustee is not able to trace improperly diverted property of the estate into the

homestead. This is an important distinction that prevents the imposition of an equitable lien in favor of the Trustee.

Most recently, the Eleventh Circuit Court of Appeals in *In re Chauncey*, 454 F.3d 1292, 1294 (11th Cir. 2006), reaffirmed that an equitable lien may only be imposed under Florida law when money used to obtain an interest in the homestead property is obtained by fraud or egregious conduct. Accordingly, the focus must be upon how the money is *obtained* and not upon how the money is *used*. *In re Cameron*, 359 B.R. 818, 822 (Bankr. M.D. Fla. 2006) (citing *In re Johnson*, 336 B.R. 568, 572 (Bankr. S.D. Fla. 2006)). Money lawfully obtained that is thereafter improperly used does not support the imposition of an equitable lien against homestead property. *Id.*

In this case, the evidence reflects that the Debtors lawfully obtained money and property which they failed to disclose and turn over. There was no evidence presented that the money and property were diverted to acquire an interest in their homestead. Accordingly, the facts do not support a surcharge against the Debtors' homestead.

### *Conclusion*

Based upon the foregoing rationale and the evidence before the Court, the Motion is granted as it relates to a surcharge against the Debtors' non-homestead exempt property. Florida law, however, does not permit or authorize the Trustee's request for surcharge against the Debtors' homestead property, and that portion of the relief requested by the Trustee is denied.

The Court will enter a separate order granting relief consistent with and for the reasons stated in this Memorandum Decision.

Dated at Tampa, Florida, on _May 11, 2007_.

Michael G. Williamson
United States Bankruptcy Judge

Copy:

Robert E. Tardif, Jr., Trustee, 1601 Jackson Street, Suite 106, Fort Myers, FL 33901
Assistant United States Trustee, 501 E. Polk Street, Suite 1200, Tampa, FL 33602
Bernard C. Mazon, 295 Grande Way, Unit #905, Naples FL 34110
Jane I. Mazon, 295 Grande Way, Unit #905, Naples, FL 34110
Christian B. Felden, 3838 Tamiami Trail, # 416, Naples, FL 34103